FILED IN CLERK'S OFFICE
U.S.D.C. - Atlanta
JAN 23 2025
KEVIN P. WEIMER, Clerk
By: _____ Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

Christine Lawrence,   ) JURY TRIAL DEMAND
              )
  Plaintiff,   )
              ) Case No. 1:25-CV-0288
v.            )
              )
EXPERIAN INFORMATION SOLUTIONS INC  )
              )
  Defendants.   )

## COMPLAINT AND JURY DEMAND

This is a civil action for actual damages, statutory damages and punitive damages brought by Christine Lawrence (Plaintiff), an individual consumer, against Defendant, EXPERIAN INFORMATION SOLUTIONS INC (hereinafter "Experian") for violations of the Fair Credit Reporting Act, 15 U.S.C. §1681 et seq. (hereinafter "FCRA").

### I. PRELIMINARY STATEMENT

1. The United States Congress has found that the banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports, directly impair the efficiency of the banking system and unfair credit reporting methods undermine the public confidence, which is essential to the continued functioning of the banking system. Congress enacted the FCRA to ensure fair and accurate reporting, promote efficiency in the banking system and protect consumer privacy.

2. The FCRA seeks to ensure consumer reporting agencies exercise their grave responsibilities with fairness, impartiality and a respect for the consumers right to privacy, because consumer

1

reporting agencies have assumed such a vital role in assembling and evaluating consumer credit and other information on consumers.

3. The FCRA protects consumers through a tightly wound procedural protections from the material risk of harms that otherwise flow from inaccurate reporting. Thus, through the FCRA, Congress struck a balance between the Credit industry's desires to base credit decisions on accurate information and a consumer's substantive right to protection from damage to reputation, shame, mortification, and the emotional distress that naturally follows from inaccurate reporting of a consumer's fidelity to his or her financial obligations.

## II.   JURISDICTION AND VENUE

4. This is an action to enforce liability under the FCRA.

5. This Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681p.

6. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2), as a substantial part of the events or omissions given rise to Plaintiff's claims occurred in this District.

## III.   PARTIES

7. Christine Lawrence ("Plaintiff") is an individual.

8. Plaintiff is a natural person.

9. Plaintiff is a resident of Dekalb County, Georgia.

10. Plaintiff is a "consumer" as defined by 15 U.S.C. § 1681a(c).

11. Plaintiff is a Health Care Manager in Atlanta and a Lay Member of Clergy seeking

12. licensing in the United Methodist Church. Plaintiff relies on her credit rating for

13. many personal and the success of licensing approval.

2

14. Upon information and belief, Defendant's physical address, is 475 Anton Blvd, Costa Mesa, CA 92626.

15. Upon information and belief, Defendant 'registered agent address is CT Corporation System 711 Capital Way S Ste 204, Olympia, WA 98501.

16. Upon information and belief, Defendant is an entity which, for monetary fees, dues, or subscriptions, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports.

17. Defendant is a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f).

18. Upon information and belief, Defendant regularly engages in the practice of assembling or evaluating, and maintaining, for the purpose of furnishing consumer reports to third parties bearing on a consumer's credit worthiness, credit standing, or credit capacity, each of the following regarding consumers residing nationwide: (1) public record information and/or (2) credit account information from person who furnish that information regularly and in the ordinary course of business.

19. Upon information and belief, Defendant is a "consumer reporting agency that compiles and maintains files on consumers on a nationwide basis" as defined by 15 U.S.C. § 1681a(p).

## IV.    Facts

20. On or about February 25th, 2024, Plaintiff discovered an inaccurate tradeline on her Experian Credit report showing several discrepancies pertaining to the Bank of America Account 4400660928933745

21. On March 22, 2024, Plaintiff sent dispute letter to Defendant, which disputed the completeness and/or accuracy of information contained in consumer reports concerning Plaintiff that were prepared and maintained by Defendant and published by Defendant to third parties.

22. Plaintiff's dispute letters to Defendant were mailed on or about March 22, 2024, via United States Postal Service Certified Mail, USPS Tracking # 9589 0710 5270 0851 4685 44.

23. A true and correct copy of the U.S.P.S. mailing label, redacted dispute letters, and electronic delivery confirmation proof are attached hereto and incorporated herein as **Exhibit A.**

24. On May 27 2024, Experian sent a verified credit statement to the plaintiff. The Plaintiff then requested a reinvestigation by mail.

25. Plaintiff reexamined her tradelines after the discrepancy letter had been sent. Plaintiff noticed inaccurate payment history for the months of March-May. For 3 months, March-May it listed 90 days late. **Exhibit B.**

26. Plaintiff's dispute letters to Defendant were mailed on or about August 13, 2024, via United States Postal Service Certified Mail, USPS Tracking # 9589 0710 5270 0851 4682 54.

27. A true and correct copy of the U.S.P.S. mailing label, redacted dispute letters, and electronic delivery confirmation proof are attached hereto and incorporated herein as **Exhibit C**

28. On August 29, 2024, during a review of tradelines to insure that requested changes had been completed, no changes had been completed in their reinvestigation. The Defendant never indicated whether they contacted the furnisher to validate the accuracy of the information.

29. Defendant failed to provide an explanation for its findings other than "VERIFIED AS ACCURATE AND UPDATED". **Exhibit D**

30. Actual payment amount was still incomplete. The balance was inaccurate and the tradeline had missing data. **Exhibit E**

31. Plaintiff's dispute letters to Defendant were mailed on or about August 30, 2024, via United States Postal Service Certified Mail, USPS Tracking # 9589 0710 5270 1412 4730 69

32. A true and correct copy of the U.S.P.S. mailing label, redacted dispute letters, and electronic delivery confirmation proof are attached hereto and incorporated herein as **Exhibit F**

33. Plaintiff's dispute letters to Defendant were mailed on or about October 3, 2024, via United States Postal Service Certified Mail, USPS Tracking # 9589 0710 5270 1412 4748 44

34. A true and correct copy of the U.S.P.S. mailing label, redacted dispute letters, and electronic delivery confirmation proof are attached hereto and incorporated herein as **Exhibit G**

35. **Exhibit A** - Defendant received Plaintiff's dispute letters via mail on March 28, 2024, 12:11 pm.

36. **Exhibit C** - Defendant received Plaintiff's dispute letters via mail on Aug 17, 2024, 12: 44 pm.

37. **Exhibit F** - Defendant received Plaintiff's dispute letters via mail on Sept 4, 2024, 12:35 pm.

38. **Exhibit G** - Defendant received Plaintiff's dispute letters via mail on Oct 10, 2024, 3:17 pm.

39. Defendant has prepared consumer reports concerning Plaintiff.

40. Defendant does not follow reasonable procedures to assure maximum possible accuracy of the information concerning Plaintiff in the consumer reports prepared by Defendant concerning Plaintiff.

41. Defendant is in possession of the Plaintiff's home mailing address.

42. Defendant is in possession of Plaintiff's telephone number.

43. Defendant is in possession of Plaintiff's email address.

44. Defendant can contact Plaintiff regarding information it intends to place in consumer reports concerning Plaintiff as a procedure to assure maximum possible accuracy of said information.

45. Defendant fails to contact Plaintiff regarding information it intends to place in consumer reports concerning Plaintiff as a procedure to assure maximum possible accuracy of said information.

46. Defendant can design and implement an electronic method to contact Plaintiff regarding information it intends to place in consumer reports concerning Plaintiff as a procedure to assure maximum possible accuracy of said information similar to what is uses for its subscribers.

47. Defendant fails to design and implement an electronic method to contact Plaintiff regarding information it intends to place in consumer reports concerning Plaintiff as a procedure to assure maximum possible accuracy of said information similar to what is uses for its subscribers in order to save costs.

48. Defendant fails to design and implement an electronic method to contact Plaintiff regarding information it intends to place in consumer reports concerning Plaintiff as a procedure to assure maximum possible accuracy of said information similar to what is uses for its subscribers because Defendant does not see assuring the maximum possible accuracy of consumer reports as a priority to its business model.

49. Defendant fails to design and implement an electronic method to contact Plaintiff regarding information it intends to place in consumer reports concerning Plaintiff as a procedure to

assure maximum possible accuracy of said information similar to what is uses for its subscribers because Defendant's business model is focused on profit on subscription fees from its subscribers.

50. Defendant sees violating consumers by not assuring accurate consumer reports as a cost of doing business and, thus, sets aside a sum of money to "pay off" consumers that it violates.

51. Defendant intentionally failed to follow reasonable procedures to assure maximum possible accuracy of the information concerning Plaintiff that Defendant prepared and published.

52. Defendant negligently failed to follow reasonable procedures to assure maximum possible accuracy of the information concerning Plaintiff that Defendant prepared and published.

53. Upon receiving Plaintiff's dispute letters dated March 28, 2024, Defendant, intentionally failed to investigate the information disputed within 30 days of receipt of Plaintiff's disputes.

54. Upon receiving Plaintiff's dispute letters dated August 17, 2024, Defendant, negligently failed to investigate the information disputed within 30 days of receipt of Plaintiff's disputes.

55. Upon receiving Plaintiff's dispute letters dated Sept 4, 2024, Defendant, intentionally failed to delete the information disputed within 30 days of receipt of Plaintiff's disputes.

56. Upon receiving Plaintiff's dispute letters dated Oct 10, 2024, Defendant, negligently failed to delete the information disputed within 30 days of receipt of Plaintiff's disputes.

57. Upon Plaintiff's request for deletion or modification of the inaccurate and/or incomplete information identified in consumer reports prepared, maintained, and published by Defendant concerning Plaintiff, Defendant did not evaluate or consider any of Plaintiff's information, claims, or evidence and did not make any attempt to substantially or reasonably reinvestigate the disputed information as required by the FCRA, including 15 U.S.C. § 1681i.

58. Defendant failed to contact Plaintiff with any questions concerning Plaintiff's disputes or the requested actions that Plaintiff commanded Defendant to take with the subject files.
59. Plaintiff in its dispute letters to Defendant that are the subject of this action requested a description of Defendant's reinvestigation procedure pursuant to 15 U.S.C. § 1681i(a)(7).
60. To date, Defendant has not provided Plaintiff with a copy of its reinvestigation results.
61. To date, Defendant has not provided Plaintiff with a description of its reinvestigation procedure with respect to Plaintiff's disputes herein that are the subject of this action.
62. Plaintiff has spent significant time and effort working to resolve these issues with Defendant.
63. Plaintiff's time spent dealing with these issues with Defendant, costs Plaintiff time away from work that she has to do at the billable rate of $65.00 per hour.
64. Plaintiff has had to spend money and incur costs for mailing correspondence to Defendant.
65. Furthermore, Plaintiff has been upset, distressed, and worried about these issues with Defendant.
66. Plaintiff has lost credit opportunities and been denied credit applications due to the consumer reports about her that are prepared, maintained, and published by Defendant.
67. Many creditors that Plaintiff attempts to do business with for personal credit transactions utilize consumer reports from Defendant.
68. Plaintiff has been denied credit applications due to lowered FICO scores due to wrongful credit reporting of certain items by Defendant in consumer files concerning Plaintiff.
69. Plaintiff has been stalled in ministerial licensing program due to inaccurate credit reporting.
70. Due to the tradeline inaccuracies, the credit worthiness was impacted. The requirement for licensing for the North Georgia Conference of the United Methodist Church

71. Requires the candidate to have a 640 or greater credit score to be considered for licensing. **Exhibit H**

72. Incorrect tradelines and reporting caused a denial in application process for license local pastor. **Exhibit I**

## V.   FIRST CLAIM FOR RELIEF
## 15 U.S.C. § 1681e(b)

73. Plaintiff realleges and incorporates paragraphs 1 through 72 above as if fully set out herein.

74. Defendant, violated 15 U.S.C. § 1681e(b) by failing to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of the consumer reports and consumer files or reports that it prepared, maintained, or published concerning Plaintiff.

75. The Defendant caused harm by performing the most common breaches in the assurance of accuracy of data by not confirming accurate data from the furnisher.

76. Failure to report updated and accurate data.

77. Inadequate communication and lack of verification with the consumer about the status of the dispute and the assumption that the furnishers data is accurate despite the consumer continued letters of dispute.

78. Defendant not reporting the same data as the other Credit Reporting Agencies.

79. Defendant not supplying the verification procedures that the Plaintiff asked for in certified mailings through the United States Postal Service.

80. As a result of Defendant's conduct, action, and inaction, Plaintiff suffered severe emotional stress including anxiety, stress, sleeplessness, and feelings of hopelessness and embarrassment. The undue strain caused by Defendant's conduct has taken a heavy toll on the Plaintiff's mental well-being, affecting her personal relationships and overall quality of life. The emotional impact was so severe that the Plaintiff sought the council of her Primary

9

care Physician and her Pastor to help her cope with trauma and distress caused by Defendants actions. **(Exhibit J)**

81. Defendant's conduct, action, and/or inaction was willful, rendering Defendant liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

82. Defendant's conduct, action, and/or inaction was willful, rendering Defendant liable for actual damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

83. In the alternative, Defendant's conduct, action, and/or inaction was negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

## VI.   SECOND CLAIM FOR RELIEF
*15 U.S.C. § 1681i*

84. Plaintiff realleges and incorporates paragraphs 1 through 83 above as if fully set out herein.

85. Defendant violated 15 U.S.C. § 1681i on multiple occasions by failing to delete inaccurate information in Plaintiff's consumer report or credit file after receiving actual notice of such inaccuracies; by failing to conduct a lawful reinvestigation; by failing to forward all relevant information to the respective alleges furnishers of the information to Defendant concerning Plaintiff; by failing to maintain reasonable procedures with which to filter and verify disputed information in Plaintiff's consumer report or credit file; by relying upon verification from a source that Defendant has reason to know or should have reason to know is unreliable; and by failing to provide Plaintiff with a description of the procedure used to determine the accuracy and completeness of the information within 15 days after receiving Plaintiff's request for the same.

86. As a result of Defendant's conduct, action, and inaction, Plaintiff suffered damage by expended costs and expenses in dealing with these issues, loss of credit, loss of ability to purchase and benefit from credit, and mental and emotional pain and anguish and humiliation and embarrassment of credit denials.

87. Defendant's conduct, action, and/or inaction was willful, rendering Defendant liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

88. In the alternative, Defendant's conduct, action, and/or inaction was negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that a judgment be entered against Defendant for:

- An award of actual and statutory damages against Defendant for violations of FCRA pursuant to 15 U.S.C. § 1681n and 15 U.S.C. § 1681o:

- An award of punitive damage against Defendant for it willful non-compliance with the FCRA pursuant to 15 U.S.C. § 1681n; and such other and further relief as the Court may deem just and proper.

*Christine Lawrence*
Christine Lawrence

Dated: January 23, 2025

3341 PineHill Drive, Decatur Ga. 30032
Tel: 678-993-9201
Email: kccglove514@gmail.com
PLAINTIFF (*pro se*)